IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CONNOR PENSION CORPORATION DEFINED
BENEFIT PLAN, TERRY CONNOR, and HOLLY
CONNOR,

    Plaintiffs,

vs.

GOODNIGHT CATTLE COMPANY LLC,
TIMOTHY F. GOODNIGHT II, TFG FINANCIAL,
INC., and GOODNIGHT CAPITAL
MANAGEMENT, INC.,

    Defendants.

No. C08-0010

ORDER REGARDING
MOTION TO DISMISS
AND MOTION TO
CHANGE VENUE

**TABLE OF CONTENTS**

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV. MOTION TO DISMISS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    *Claims against Defendants TFG Financial, Inc. and
          Goodnight Capital Management, Inc.*. . . . . . . . . . . . . . . . . . . 5
    B.    *Whether Counts V, VI, and VIII allege Fraud with Particularity.* . . . 7

*V.  MOTION TO TRANSFER VENUE.* . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.    *Convenience Factors and "Interest of Justice" Factors.* . . . . . . . . . 10
        1.    *Convenience of the Witnesses.* . . . . . . . . . . . . . . . . . . 10
        2.    *Accessibility to Records and Documents.* . . . . . . . . . . . . 12
        3.    *Convenience of the Parties.* . . . . . . . . . . . . . . . . . . . . 12
        4.    *Location Where the Conduct Complained of Occurred.* . . . . . 13
        5.    *Plaintiffs' Choice of Forum.* . . . . . . . . . . . . . . . . . . . . 14
        6.    *Conclusion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    B.    *Whether the Northern District of Iowa is a Proper Forum.* . . . . . . 15

*VI. SUMMARY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*VII. ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss (docket number 15) filed by Defendants Goodnight Cattle Company LLC, Timothy F. Goodnight II, TFG Financial, Inc., and Goodnight Capital Management, Inc. on March 7, 2008, the Resistance (docket number 17) filed by Plaintiffs Connor Pension Corporation Defined Benefit Plan, Terry Connor, and Holly Connor on March 24, 2008, and the Reply (docket number 18) filed by Defendants on March 31, 2008.[1]

This matter also comes before the Court on the Motion to Change Venue (docket number 6) filed by Defendants Goodnight Cattle Company LLC, Timothy F. Goodnight II, TFG Financial, Inc., and Goodnight Capital Management, Inc. on February 5, 2008, the Resistance (docket number 14) filed by Plaintiffs Connor Pension Corporation Defined Benefit Plan, Terry Connor, and Holly Connor on March 3, 2008, and the Reply (docket number 16) filed by Defendants on March 10, 2008.

## II. PROCEDURAL BACKGROUND

On January 4, 2008, Plaintiffs filed a Petition at Law (docket number 4) in the Iowa District Court for Floyd County. On January 18, 2008, Defendants filed a Notice of Removal (docket number 1) from the Iowa District Court to this Court. Defendants filed the initial Motion to Dismiss on January 29, 2008 and the Motion to Change Venue on February 5, 2008. On February 22, 2008, Plaintiffs filed a First Amended Complaint (docket number 11) alleging breach of contract (Count I), breach of fiduciary duty (Count II), negligence (Count III), negligent misrepresentation (Count IV), fraudulent misrepresentation (Count V), fraudulent nondisclosure (Count VI), conversion (Count VII), and violation of securities laws (Count VIII). On March 7, 2008, Defendants filed

---

[1] Defendants filed a Motion to Dismiss (docket number 5) on January 19, 2008. The Plaintiffs subsequently filed a First Amended Complaint (docket number 11), however, and Defendants then filed the instant motion. Accordingly, the initial Motion to Dismiss will be denied as moot.

2

the instant Motion to Dismiss. On May 20, 2008, both parties consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

## III. RELEVANT FACTS

Plaintiffs Terry Connor ("Terry") and Holly Connor ("Holly") met Defendant Timothy F. Goodnight II ("Tim") in November 2003. At that time, Tim was dating Terry and Holly's daughter, Kate. Tim and Kate were married from June 2005 through December 2006.

Beginning in late November 2003, Tim informed Terry that he had $1,025,000 invested in a cattle feeding business, Defendant Goodnight Cattle Company, LLC ("Goodnight Cattle"). Tim encouraged Terry to make an equivalent investment in Goodnight Cattle and represented that Terry would earn a 30% return on his investment. Between January 19, 2004 and October 26, 2004, Terry, Holly, and Plaintiff Connor Pension Corporation Defined Benefit Plan ("Connor Pension") invested $1,025,000 in Goodnight Cattle.[2]

According to Terry, between 2004 and 2006, Tim continually represented that the investments were doing well and the funds were on track to more than double over a 3.5-year period. *See* Plaintiffs' First Amended Complaint at ¶ 19. In December 2006, however, Terry was provided with Tim's personal income tax return which showed an adjusted gross income of - $274,833 (i.e., *minus* $274,833). Terry instructed Tim to liquidate the investments in Goodnight Cattle. In March 2007, Holly and Connor Pension received two checks from Goodnight Cattle in the amounts of $30,633.80 and $173,591.54. A letter accompanying the checks provided in pertinent part:

> As discussed, I will have a final Comp. from the accountants soon which shows where the losses occurred and the exact amounts. I will review a few details before the final report.

---

[2] Plaintiffs made the following investments: (1) Connor Pension invested $150,000 on January 19, 2004; (2) Holly invested $150,000 on June 18, 2004; (3) Connor Pension invested an additional $275,000 on June 18, 2004; and (4) Holly and Terry invested $450,000 on October 26, 2004.

3

> First, we had the $80,000 loss due to the McGinly-Schilz mismanagement early on in the cattle feeding. We had the $80-90,000 loss in our Bond investment. We had the $400,000 loss in the Carolina Development Company due to the fraud committed by their management. . . . Finally the cattle feeding posted $400-500,000 in losses due to interest rates doubling, higher than expected death loss, corn costs rising and the cattle market dropping during a time when we marketed most of the cattle. The Holsteins ended up being the worst of all posting about a $200,000 loss because of a high rate of death loss. . . . I hope to get another $200,000-$400,00 to you by the end of the year to close this out.

(Plaintiffs' Exhibit B attached to Plaintiffs' Brief in Support of Resistance to Defendants' Motion to Transfer Venue.) Other facts that are significant for making a determination on Defendants' Motion to Transfer Venue will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## *IV. MOTION TO DISMISS*

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a claim if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *In re Operation of Missouri River System Litigation*, 418 F.3d 915, 917 (8th Cir. 2005). In discussing Rule 12(b)(6) motions to dismiss, the Eighth Circuit Court of Appeals has stated that such motions:

> '[do] not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). The complaint must allege facts, which, taken as true, raise more than a speculative right to relief. *Id.* at 1965. Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).

*Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008); *see also Missouri River System Litigation*, 418 F.3d at 917 (A court may "dismiss the case only when it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief."); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) ("A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.' *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).").

### A. Claims against Defendants TFG Financial, Inc. and Goodnight Capital Management, Inc.

Defendants TFG Financial, Inc. ("TFG") and Goodnight Capital Management, Inc. ("Goodnight Capital") argue that all claims against them should be dismissed because Plaintiffs' First Amended Complaint fails to sufficiently state any claim against them. Specifically, TFG and Goodnight Capital argue that:

> There is not one single factual obligation setting forth any relationship whatsoever between Goodnight Management or TFG and any or all of the Plaintiffs. There is not one single fact pled that alleges any duty or obligation assumed by either Goodnight Management or TFG or any circumstance in which a duty or obligation could be inferred. Further, the Amended Complaint fails to state any promise or representation made to any of the Plaintiffs by either Goodnight Management or TFG.

(Defendants' Brief in Support of Motion to Dismiss at 3.) Plaintiffs respond that TFG and Goodnight Capital should not be dismissed because the First Amended Complaint alleges that TFG and Goodnight Capital are the alter egos of Defendants Tim Goodnight and Goodnight Cattle.

Federal Rule of Civil Procedure 8(a) provides in pertinent part:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>
> . . .
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a)(2)-(3). "[T]he Federal Rules of Civil Procedure contemplate a liberal notice pleading standard." *Leatherman v. Tarrant County Narcotics & Intelligence Unit*, 507 U.S. 163, 168 (1993). The Rules do not require a party to set out in detail all the facts upon which it bases its claims. *Id.* Instead, the Rules only require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Such a short and plain statement must provide fair notice of the claim and the grounds upon which the claim rests. *Leatherman*, 507 U.S. at 168. The Rules are designed "to give notice to the other party and not to formulate issues or fully summarize the facts involved." *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 389-90 (8th Cir. 1968) (citation omitted); *see also Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) ("The essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.' *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979).").

In their First Amended Complaint, Plaintiffs allege that TFG and Goodnight Capital are the alter egos of Tim Goodnight and Goodnight Cattle. *See* Plaintiffs' First Amended Complaint at ¶¶ 3-4. Although Plaintiffs do not explicitly link TFG or Goodnight Capital to themselves or representations made to them by Tim and Goodnight Cattle, Plaintiffs' allegations that TFG and Goodnight Capital are alter egos of Tim and Goodnight Cattle impute such a relationship and connect TFG and Goodnight Capital to the representations made by Tim and Goodnight Cattle. Accordingly, Plaintiffs' First Amended Complaint puts all Defendants on notice that they are included in the claims showing entitlement to relief. *See Clausen & Sons, Inc.*, 395 F.2d at 389-90. Accepting the allegations in the First Amended Complaint as true and viewing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have complied with Rule 8(a) and the First Amended Complaint gives fair notice to all Defendants, including TFG and Goodnight

Capital, "'of the nature and basis or grounds for [the] claim[s], and a general indication of the type of litigation involved.'" *Northern State Power Co.*, 358 F.3d at 1056-57 (quotation omitted). Therefore, the Court finds that Defendants' motion to dismiss as to TFG and Goodnight Capital should be denied.[3]

### B. Whether Counts V, VI, and VIII allege Fraud with Particularity

Defendants argue that Counts V, VI, and VIII of Plaintiffs' First Amended Complaint should be dismissed against all Defendants because Plaintiffs' allegations of fraudulent misrepresentation (Count V), fraudulent nondisclosure (Count VI), and violations of securities laws (Count VIII) fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Defendants assert that these claims simply provide conclusory allegations and lack the particularity required by Rule 9(b). In the alternative to dismissal, Defendants argue that Plaintiffs should be "required to amend their [First] Amended Complaint to comply with Rule 9(b)[.] . . ."[4] Plaintiffs contend that the First Amended Complaint complies with Rule 9(b) and contains specific facts which give rise to their fraud claims.

Federal Rule of Civil Procedure 9(b) provides:

> **(b) Fraud or Mistake; Conditions of the Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. . . . Put another way, the

---

[3] The Court notes that the parties discuss the alter ego doctrine and its connection to corporate law issues of piercing the corporate veil at length. The Court finds that this discussion is premature and unnecessary for making a determination on the motion to dismiss.

[4] *See* Defendants' Brief in Support of Motion to Dismiss at 8.

7

complaint must identify the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations and internal quotations omitted); *see also BJC Health System v. Columbia Casualty Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.' *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)."). "'Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'" *BJC Health System*, 478 F.3d at 917 (quoting *Commercial Property Investments, Inc. v. Quality Inns International, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

The Eighth Circuit Court of Appeals has cautioned that Rule 9(b) is to be interpreted "'in harmony with the principles of notice pleading.'" *BJC Health System*, 478 F.3d at 917 (quoting *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). The purpose of Rule 9(b) is to allow defendants to respond "'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *BJC Health System*, 478 F.3d at 917 (quotation omitted).

Having thoroughly reviewed Plaintiffs' First Amended Complaint, the Court finds that Plaintiffs have complied with Rule 9(b) and identified the "who, what, where, when, and how" of the alleged fraudulent misrepresentation (Count V) and fraudulent nondisclosure (Count VI). *See Joshi*, 441 F.3d at 556; *see also* Plaintiffs' First Amended Complaint at ¶¶ 1-30, 54-70. Plaintiffs' allegation of violation of securities laws (Count VIII), however, fails to identify "what" securities laws were violated. Plaintiffs simply state that "Defendants violated federal and state securities laws." The Court finds that the allegation of violation of securities laws is "so vague or ambiguous that [Defendants] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Therefore, the Court determines that, in accordance with Rule 12(e), Plaintiffs should provide a more definite statement with regard to "what" securities laws were allegedly violated by Defendants.

## V. MOTION TO TRANSFER VENUE

The transfer of a case from one federal district court to another federal district court is governed by Title 28, United States Code, Section 1404(a). *Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Considerable deference is given to a plaintiff's choice of forum. *Terra International, Inc.*, 119 F.3d at 695. Therefore, the party seeking the transfer "typically bears the burden of proving that a transfer is warranted." *Id.* (Citations omitted); *see also International Administrators, Inc. v. Pettigrew*, 430 F. Supp.2d 890, 889 (S.D. Iowa 2006) ("The moving party has the burden of showing that the transfer will be to a more convenient forum. *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980).").

In ruling on a motion to transfer venue, the Eighth Circuit Court of Appeals explained in *Terra International, Inc.* that:

> The statutory language [of § 1404(a)] reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors.

*Terra International, Inc.*, 119 F.3d at 691 (citations omitted). Specifically, under the "convenience" categories, factors a court should consider include: "(1) the convenience of the parties, (2) the convenience of the witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained

of occurred, and (5) the applicability of each forum state's substantive law." *Id.* at 696 (citing *Terra International, Inc. v. Mississippi Chemical Corp.*, 922 F. Supp. 1334, 1357-61 (N.D. Iowa 1996)). Relevant factors under the "interest of justice" category, include: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Id.* (citing *Terra International, Inc.*, 922 F. Supp. at 1361-63); *see also Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (providing similar list of "convenience" and "interest of justice" factors for a court to consider); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (same). The party seeking the transfer has the burden of showing that "'the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed.'" *Pettigrew*, 430 F. Supp. 2d at 899-900 (quoting *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 927 (W.D. Mo. 1985)).

### A. Convenience Factors and "Interest of Justice" Factors

#### 1. Convenience of the Witnesses

Defendants argue that the location of witnesses warrants transfer of this case to the United States District Court for the District of Nebraska. Defendants assert that the vast majority of the "cattle investments giving rise to Plaintiffs' allegations concerned cattle that were located in feeding operations within the state of Nebraska."[5] Specifically, Defendants' investments included the following cattle feeding operations: K.C.C. Feeding Company in Minden, Nebraska, North Platte Feeders in North Platte, Nebraska, and McGinley-Shilz Feedyards in Brule, Nebraska. According to Defendants, testimony from representatives of these cattle feeding operations in Nebraska will be crucial to the defense of their case. Defendants maintain that these witnesses will testify generally as to cattle

---

[5] *See* Defendants' Brief in Support of Motion to Transfer Venue at 7.

10

feeding investment practices and considerations, and specifically to Defendants' investment practices and success with their cattle feeding operations. With regard to these witnesses, Defendants further note:

> Not only are the above-mentioned witnesses beyond this Court's subpoena power, and whose testimony is essential to the Defendants' defense, the individuals and their associates are continuously, daily, monitoring their cattle operations due to the fact that sudden changes in the cost, care and health of the animals fed significantly affect their business with a moment's change of circumstances. These individuals will not want to be away from their place of work more than necessary. Yet, their presence in the Courtroom will be important in defending these allegations.

(*See* Defendants' Brief in Support of Motion to Transfer Venue at 9.) Defendants also point out additional material witnesses who reside in Nebraska and warrant transfer of this case. These witnesses include: Arnold Nelson, a former associate of Goodnight Cattle who resides in Omaha Nebraska; accountants from Lutz and Company, located in Omaha, Nebraska; employees of The First National Bank of Omaha, located in Omaha, Nebraska; and Tim's parents, Tim and Tena Goodnight, who also reside in Omaha, Nebraska.

Plaintiffs argue that the convenience of witnesses does not support a transfer of venue to the District of Nebraska. Plaintiffs maintain that the witnesses associated with cattle feeding operations discussed by Defendants are not material to this case. Specifically, Plaintiffs argue that the First Amended Complaint "does not contend that the cattle operations themselves were mismanaged. Rather, . . . the investments were, at best, mismanaged, largely because Defendants failed to provide Plaintiffs with accurate information and documentation about the investments. This was Defendants' failure--not the failure of any of the cattle operators that Defendants may have to have testify."[6] Plaintiffs further argue that there are important witnesses in Iowa whose testimony will be significant for their claims. These witnesses include: Larry and Sue Pump, Plaintiffs'

---

[6] See Plaintiffs' Brief in Support of Resistance to Defendants' Motion to Transfer Venue at 6-7.

CPAs, who reside in Charles City, Iowa; Travis Thomas, who lives in Floyd, Iowa; Karl Fox, owner of Fox Feedlots and resident of Elma, Iowa; and Jan Kahler, employee of First Security Bank, located in Charles City, Iowa. According to Plaintiffs, all of these witnesses will testify to the representations made by Tim regarding his expertise in the cattle feeding business, the ways in which he would invest Plaintiffs' funds, and the performance of those investments.

In their briefs, Plaintiffs present important witnesses who reside in Iowa and Defendants present important witnesses who reside in Nebraska. The parties' briefs also indicate that the testimony of these witnesses will be material to their respective cases. Therefore, the Court finds that this factor weighs equally to both Plaintiffs and Defendants.

### 2. *Accessibility to Records and Documents*

Defendants argue transfer is warranted because all of the material records and relevant documents are located in Nebraska. While it may be true that all of the material records and relevant documents are located in Nebraska, Defendants have not alleged, and have not shown, that the documents are so voluminous that they would be difficult to transport or would be difficult to copy. *See In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 690 (E.D. Tex 1999) (absent a showing that documents are "so voluminous that they would be difficult to transport" or copy, a court does not consider the accessibility to records and documents an important factor in the transfer analysis). Therefore, the Court finds that this factor does not weigh in favor of transfer.

### 3. *Convenience of the Parties*

Defendants argue that transfer should be granted because Nebraska is a convenient forum for both Plaintiffs and Defendants. Defendants maintain that even though Plaintiffs live in Iowa, Nebraska is a convenient forum because during the time period that Plaintiffs and Defendants had a business relationship, Plaintiffs regularly visited Nebraska.[7]

---

[7] Defendants claim that between 2004 and 2006 Plaintiffs visited Omaha, Nebraska, every two to three weeks. *See* Defendants' Brief in Support of Motion to Transfer Venue
(continued...)

Plaintiffs respond that during the time period of their business relationship with Defendants, Tim also traveled to Iowa frequently, invested in Iowa business operations, owned a farm in Iowa, and owned a residence in Iowa for a short period of time. In their Reply, Defendants argue that Plaintiffs exaggerate Tim's presence in Iowa between 2004 and 2006. Defendants maintain that Tim's dealings in Iowa are inconsequential to whether this case should be transferred to Nebraska.

Plaintiffs are residents of Iowa. Defendants are residents of Nebraska. It appears that both parties have spent time in Iowa and Nebraska. "'Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for change of venue.'" *Terra International, Inc.*, 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Because considerable deference is given to a plaintiff's choice of forum and Defendants offer no substantive reasons that Nebraska is a more convenient forum for both of the parties, the Court finds that this factor does not weigh in favor of transfer. *See Terra International, Inc.*, 119 F.3d at 695.

### 4. *Location Where the Conduct Complained of Occurred*

Defendants argue that transfer is appropriate because all of the alleged events giving rise to Plaintiffs' First Amended Complaint took place in Nebraska. Specifically, Defendants maintain that:

> all of the alleged discussions, decisions, actions, and alleged omissions on the part of Defendants, one or more took place in Omaha, Nebraska. In addition, all of Plaintiff Terry Connor's authorizations for any and all of his investments which are the subject of Plaintiffs' Complaint took place in face to face meetings with Defendants, one or more, in Omaha, Nebraska, or over the telephone while Defendants were in Omaha, Nebraska. And further, with respect to the subject of the litigation, 95% of the cattle investments involved cattle which were located in Nebraska.

---

[7](...continued)
at 12.

(*See* Defendants' Brief in Support of Motion to Transfer Venue at 14.) Plaintiffs dispute Defendants' claim that "all of the alleged discussions, decisions, actions, and alleged omissions on the part of Defendants . . . took place in Omaha, Nebraska." Plaintiffs maintain that this statement is false.

Plaintiffs' First Amended Complaint alleges that in addition to occurring in Nebraska, discussions, decisions, actions, and representations between Defendants and Plaintiffs also occurred in Charles City, Iowa, Basset, Iowa, Centerville, Iowa, Clear Lake, Iowa, and Elma, Iowa.[8] In determining a motion to transfer venue, courts accept all well-pleaded allegations in the complaint as true. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). Thus, accepting the allegations in Plaintiffs' First Amended Complaint as true, the Court finds that the alleged events giving rise to Plaintiffs' Complaint took place in both Iowa and Nebraska. Accordingly, the Court determines that this factor does not weigh in favor of transfer.

### 5. *Plaintiffs' Choice of Forum*

Plaintiffs argue that their choice of forum - the United States District Court for the Northern District of Iowa - should be given considerable weight. Specifically, Plaintiffs assert that their choice of forum is supported by the fact that they are residents of Iowa, the place of injury is Iowa, and most of their claims will be governed by Iowa law. Defendants acknowledge that deference is generally given to a plaintiff's choice of forum, but argue that deference for Plaintiffs in this case is negated because all of the events giving rise to Plaintiffs' action occurred in Nebraska. Having already found that the events giving rise to Plaintiffs' action took place in both Iowa and Nebraska, and considering the deference given to a plaintiff's choice of forum, the Court finds that this factor weighs heavily against transfer.

---

[8] *See* Plaintiffs' First Amended Complaint at ¶¶ 14, 17, 18, 20, and 25.

### 6. *Conclusion*

Upon weighing various factors relevant to making a transfer determination under 28 U.S.C. § 1404(a), the Court concludes that the balance of these factors weighs against transferring this case to the United States District Court for the District of Nebraska. Defendants have not met their burden and therefore Plaintiffs' "'choice of forum should not be disturbed.'" *Pettigrew*, 430 F. Supp. 2d at 899-900; *see also Terra International, Inc.*, 119 F.3d at 695 (The party seeking the transfer "typically bears the burden of proving that a transfer is warranted."). Accordingly, Defendants' Motion to Transfer Venue will be denied.

### B. *Whether the Northern District of Iowa is a Proper Forum*

Defendants also argue that the Northern District of Iowa may be an improper forum. Specifically, Defendants argue that the case was removed to this Court based on diversity jurisdiction and "it would appear that this Court also has subject matter jurisdiction as Plaintiffs have alleged violations of certain federal securities laws. Consequently, venue appears to be improper under 28 U.S.C. § 1391(b)."[9] 28 U.S.C. § 1391(b) provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Defendants contend that this case should be transferred to Nebraska under § 1391(b) because all of the Defendants reside in Nebraska and all of the events giving rise to Plaintiffs' First Amended Complaint took place in Nebraska. Plaintiffs argue

---

[9] *See* Defendants' Brief in Support of Motion to Transfer Venue at 14-15.

that if venue is governed by § 1391(b), then the Northern District of Iowa is an appropriate venue because contrary to Defendants' argument, a substantial part of the events giving rise to this action occurred in Iowa, including representations made by Defendants to Plaintiffs in Iowa and Defendants taking delivery of Plaintiffs' investment checks in Iowa.

The Court, having thoroughly reviewed Plaintiffs' pleadings, and accepting the allegations contained in the pleadings as true, finds that a substantial part of the events giving rise to Plaintiffs' claims occurred in Iowa. Therefore, the Court determines that venue in the Northern District of Iowa is proper under 28 U.S.C. § 1391(b)(2).

## *VI. SUMMARY*

The Court finds that Defendants TFG and Goodnight Capital should not be dismissed from this case. The Court further finds that Counts V, VI, and VIII of Plaintiffs' First Amended Complaint should not be dismissed. The Court determines, however, that Plaintiffs should provide a more definite statement as to Count VIII, setting forth the specific federal and state securities laws allegedly violated by Defendants.

The balance of the relevant factors the Court considered in determining whether this case should be transferred to the District of Nebraska weighs against transfer. The Court also finds that the Northern District of Iowa is a proper venue under 28 U.S.C. § 1391(b)(2). Therefore, the Court determines that Defendants' Motion to Transfer Venue should be denied.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1. The Motion to Dismiss (docket number 5) is hereby **DENIED** as moot.
2. The Motion to Dismiss (docket number 15) is hereby **DENIED**.
3. Not later than 14 days following the entry of this order, Plaintiffs must provide a more definite statement regarding Count VIII of their First Amended Complaint in compliance with Federal Rule of Civil Procedure 12(e).

4. The Motion to Transfer Venue (docket number 6) filed by Defendants is hereby **DENIED**.

DATED this 25th day of June, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA